**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**


John Doe[1]

   v.                                   Case No. 21-cv-604-LM

New Hampshire Department of
Corrections Commissioner, et al.


**REPORT AND RECOMMENDATION**


In this action, brought pursuant to 42 U.S.C. § 1983, the

plaintiff has filed complaint addenda (Doc. Nos. 28, 29, 32),

which are before this Court for preliminary review, pursuant to

28 U.S.C. § 1915A(a) and LR 4.3(d)(1).  In conducting this

preliminary review, the Court considers those documents in the

context of the assertions and arguments set forth in the

plaintiff's complaint (Doc. No. 1) and previously filed

complaint addenda (Doc. Nos. 2, 3, 7, 12, 13, 15, 16, 20).[2]

---

[1] The Court has directed that the plaintiff be identified as
"John Doe" in documents available to the public in this case,
for reasons explained in its August 13, 2021 Order (Doc. No.
11).

[2] The factual assertions and legal arguments the plaintiff
sets forth in Document Nos. 1, 2, 3, 7, 12, 13, 15, 16, 20, 28,
29, and 32, are construed, in the aggregate, as the complaint in
this matter for all purposes.

## Background[3]

Plaintiff alleges that in 2018, while he was incarcerated at the New Hampshire State Prison ("NHSP"), two prisoners assaulted him due to his association with another prisoner who had cooperated with and provided information to law enforcement concerning the criminal conduct of a third party.  Plaintiff asserts that during the assault he was punched repeatedly in his head and neck, resulting in a concussion, a broken neck, bruising, swelling, and pain.  The plaintiff asserts that the assault caused him permanent injuries.

The Court has previously found that Plaintiff stated an Eighth Amendment claim against New Hampshire Department of Corrections ("DOC") Commissioner Helen Hanks, NHSP Capt. Jon Masse, DOC Classifications Director Sarah Provencher, NHSP Lt. Andrew Newcomb, NHSP Corporal Kimball (whose first name is unknown, and (retired) NHSP Corporal Laura Desautelle, alleging that those defendants failed to protect him from harm, resulting in the above-described assault.[4]  The recent complaint addenda,

---

[3] In conducting this preliminary review, the Court applies the standard of review set forth in its July 15, 2022 Report and Recommendation (Doc. No. 26).

[4] See July 15, 2022 Report and Recommendation (Doc. No. 26) (approved by Oct. 21, 2022 Order (Doc. No. 34)); July 15, 2022 Order (Doc. No. 27); Sept. 6, 2022 Order (Doc. No. 30).

considered in the context of the previously-filed complaint documents, assert additional claims which the Court addresses in this Report and Recommendation ("R&R").

## Discussion

### I.   Negligence

The plaintiff alleges that the facts underlying the Eighth Amendment claim that has been served on the defendants in this case, also give rise to a negligent claim against those defendants under state law.  As it is appropriate for the Court to consider the claims together, the Court will exercise its supplemental jurisdiction over the negligence claim.  See 28 U.S.C. § 1367.  Simultaneously with this R&R, the Court issues an Order directing that the defendants answer the negligence claim.

### II.   Criminal Prosecution

The plaintiff states that he has asked DOC officials, the Concord Police Department, the Merrimack County Attorney's Office and the New Hampshire Attorney General's Office to investigate and criminally prosecute the individuals who assaulted him in 2018, but that no investigation or prosecution

has been initiated against his assailants.  There is no cause of

action under § 1983 for the failure to investigate or prosecute

a crime, as an individual has no federal constitutional right to

have criminal wrongdoers brought to justice.  See Leeke v.

Timmerman, 454 U.S. 83, 87 (1981); Linda R. S. v. Richard D.,

410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially

cognizable interest in the prosecution or nonprosecution of

another").

Accordingly, the District Judge should dismiss plaintiff's

claim that the defendants have violated his right to have his

assailants investigated and criminally prosecuted.  Similarly,

to the extent the plaintiff seeks an order directing the

defendants or any state official to conduct an independent

investigation of the assault or the circumstances surrounding

it, or institute a criminal prosecution against his assailants,

the District Judge should deny that request.


III. Criminal Enterprise/RICO

Plaintiff asserts that the prison has been rendered

unnecessarily dangerous, particularly for vulnerable prisoners,

due in part to "racketeering activity" engaged in by a "criminal

enterprise" of corrections officers and officials, in violation

of the Racketeer Influenced Corrupt Organizations Act ("RICO").

To the extent the plaintiff seeks to assert criminal liability

under RICO, as explained above, he cannot state a claim upon

which relief could be granted for the criminal prosecution of

another person.

To the extent the plaintiff seeks to assert a civil RICO

claim, 18 U.S.C. § 1964 "provides a cause of action for '[a]ny

person injured in his business or property by reason of a

violation of [18 U.S.C. § 1962].'"  Lerner v. Colman, 26 F.4th

71, 77 (1st Cir. 2022) (citing 18 U.S.C. § 1964).  To state a

civil claim under RICO, a plaintiff must assert facts to

demonstrate that the alleged injury to his business or property

was caused by the "'(1) conduct (2) of an enterprise (3) through

a pattern (4) of racketeering activity.'"  Id.  "Racketeering

activity" is defined as engaging in one or more of the criminal

offenses listed in 18 U.S.C. § 1962.  See 18 U.S.C. § 1961(1).

The plaintiff has not alleged that he suffered any injury

to his business or property which can be attributed to a RICO

violation.  Even if Plaintiff could demonstrate such an injury,

and assuming, without deciding, that the defendants could be

considered an "enterprise" for purposes of identifying a RICO

claim, he has still failed to state specific nonconclusory facts

sufficient to satisfy the other elements of such a claim.  The

plaintiff has failed to allege facts showing that any defendant,

in an attempt to further the goals of the alleged "enterprise,"

committed any crime listed in § 1962.  Plaintiff's allegations

thus fail to demonstrate a "pattern" of such criminal activity,

which requires a showing of the commission of at least two of

the criminal offenses listed in § 1962, and that those offenses

are "'related'" and "'amount to or pose a threat of continued

criminal activity.'"  Lerner, 26 F.4th at 84.

Accordingly, the Court finds that the plaintiff has failed

to state a civil RICO claim upon which relief can be granted.

The district judge, therefore, should dismiss that claim.


IV.  Consciracy

Apart from his assertion of a RICO claim, the plaintiff

asserts generally that the defendants were involved in a

conspiracy to deprive him of his constitutional rights.  Such

allegations of conspiracy must "be supported by material facts,

not merely conclusory statements."  Slotnick v. Garfinkle, 632

F.2d 163, 165 (1st Cir. 1980) (per curiam) (citation omitted).

To assert a conspiracy claim, the plaintiff must assert facts

showing that "two or more individuals conspire[d] for the

purpose of depriving another of rights or privileges accorded to them by law." Alston v. Spiegel, 988 F.3d 564, 577 (1st Cir. 2021) (citing 42 U.S.C. § 1985(3)). Additionally, to state a civil rights conspiracy claim, the plaintiff must "'allege facts indicating an agreement among the conspirators to deprive the plaintiff of h[is] civil rights.'" Alston, 988 F.3d at 577-78 (quoting Parker v. Landry, 935 F.3d 9, 18 (1st Cir. 2019)). "Vague and conclusory allegations about persons working together, with scant specifics as to the nature of their joint effort or the formation of their agreement, will not suffice" to state a claim. Alston, 988 F.3d at 578.

The plaintiff has failed to assert specific facts to show the existence of an agreement between the defendants to deprive him of his constitutional civil rights. While he has alleged that more than one defendant to this action engaged in conduct to violate his rights, he has not pointed to facts demonstrating that they entered into any agreement with one another to reach that result. Accordingly, the plaintiff has failed to state a conspiracy claim upon which relief might be granted, and the District Judge should dismiss that claim.

V.    Secure Housing Unit

The plaintiff alleges that after he was assaulted, he sought protective custody.  Plaintiff states that he was placed in the NHSP's Secure Housing Unit ("SHU"), which he describes as a "punishment unit," Doc. No. 7-1, at 20, because he could not be placed in the unit where protective custody inmates are normally placed, because another prisoner with whom he was not allowed to share a unit under prison policy, was being housed there.  The plaintiff states that while in SHU, he was locked in segregation for more than twenty-two hours per day, despite the fact that he was not in that unit as punishment, and had generally been of good behavior since he was in DOC custody.

In general, absent facts demonstrating that a particular prison classification or housing placement imposes an "'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,'" inmates do not have a right or protected interest in any particular prison classification or housing placement.  See Wilson v. N.H. State Prison Warden, No. 19-cv-127-PB, 2019 U.S. Dist. LEXIS 100750, at *5-*6, 2019 WL 2504616, at *2 (D.N.H. May 14, 2019) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)), R&R adopted sub nom. Wilson v. N. Corr. Facility, Warden, No. 19-cv-127-PB, 2019 U.S. Dist. LEXIS

101693, at *1, 2019 WL 2503980, at *1 (D.N.H. June 17, 2019).
Here, Plaintiff states that he was subjected to more restrictive
conditions of confinement in the SHU than were present in the
unit from which he was transferred.  Without more, the
plaintiff's allegations fail to demonstrate that his temporary
placement in the SHU amount to a hardship atypical of prison
life.  See, e.g., Sandin, 515 U.S. at 484 (thirty days in
segregation is not an atypical and significant hardship);
Hardaway v. Meyerhoff, 734 F.3d 740, 744 (7th Cir. 2013) (six-
month confinement in segregation, without more, was not atypical
and significant hardship); Waldron v. Gaetz, No. 11-cv-242-JPG-
PMF, 2013 U.S. Dist. LEXIS 112965, at *6, 2013 WL 4051703, at *2
(S.D. Ill. Aug. 12, 2013) (six month segregation was not
atypical and significant hardship).

As the plaintiff has failed to demonstrate that he was
subject to hardship atypical of prison life while he was housed
temporarily in the SHU, he has failed to state a claim arising
from that placement.  Accordingly, the District Judge should
dismiss Plaintiff's claim challenging his placement in the SHU.

VI.   <u>SPMI Classification</u>

Plaintiff alleges that after he was properly classified at the NHSP as "Seriously and Persistently Mentally Ill" ("SPMI"), that NHSP Senior Psychiatric Social Worker Deborah Green unilaterally removed his SPMI classification in violation of DOC policy.  Plaintiff alleges that when Ms. Green removed his SPMI designation, she had never met or treated the plaintiff, and that he had never discussed removing his SPMI classification with her, that he had not agreed to removing his SPMI classification, and that he was familiar with her only through a single written exchange.

Plaintiff claims that DOC policy requires a decision to remove a prisoner's SPMI classification to be authorized by a team which includes a physician/psychiatrist.  Plaintiff alleges that the removal of his SPMI classification in a manner inconsistent with DOC policy violated his Fourteenth Amendment due process rights.  Plaintiff further claims that the removal of his SPMI designation was partly responsible for the defendants in this case placing him in harm's way and thus was a contributing cause of the 2018 assault.

To establish that his due process rights have been violated, a plaintiff must demonstrate that he has suffered a

deprivation of a protected interest in life, liberty, or

property.  See Mathews v. Eldridge, 424 U.S. 319, 332 (1976).

In general, a prisoner has no freestanding liberty interest in

having prison officials follow prison policies.  See McFaul v.

Valenzuela, 684 F.3d 564, 579 (5th Cir. 2012); Querido v. Wall,

C.A. No. 10-098 ML, 2010 U.S. Dist. LEXIS 139201 at *14, 2010 WL

5558915, at *3 (D.R.I. Dec. 8, 2010), R&R adopted, 2011 U.S.

Dist. LEXIS 1882, at *1, 2011 WL 63503, at *1 (D.R.I. Jan. 7,

2011).  Without more, the facts alleged by the plaintiff do not

state a claim upon which relief can be granted for violations of

his Fourteenth Amendment right to due process with respect to

the violation of prison policy he alleges occurred when Ms.

Green removed his SPMI classification.

To the extent the plaintiff seeks to assert an Eighth

Amendment endangerment claim based on the removal of his SPMI

classification, his claim that the removal of his SPMI

classification and the 2018 assault are connected is entirely

conclusory.  Plaintiff has failed to demonstrate that his mental

health status had anything to do with his assault, or that an

SPMI classification in place at the time of the assault would

have prevented the assault.  For these reasons, the plaintiff

has failed to state a claim upon which relief might be granted

arising from the removal of his SPMI classification, and the
District Judge should dismiss that claim.


VII. Threats by Prisoners

    The plaintiff asserts that immediately after he was
assaulted in 2018, his assailants threatened him with further
violence if he told any prison officer or official about the
assault.  Plaintiff further alleges he was similarly threatened
by unidentified prisoners after he was placed in the SHU.
Plaintiff asserts that DOC officers and officials violated his
Eighth Amendment right not to be subjected to cruel and unusual
punishment when they failed to protect him from being verbally
threatened by other prisoners.

    To establish an Eighth Amendment claim for the failure to
protect a prisoner from harm, the plaintiff must show that (1)
he is "incarcerated under conditions posing a substantial risk
of serious harm" and (2) prison officials acted with "deliberate
indifference" by disregarding a known and excessive risk to his
safety.  Farmer v. Brennan, 511 U.S. 825, 834, 837 (1994).
"'[P]rison officials cannot be indifferent . . . if they are
unaware of the risk' of harm and, if they are aware, they still
may not be considered indifferent if 'they responded reasonably

to the risk.'"  Norton v. Rodrigues, 955 F.3d 176, 185 (1st Cir.

2020) (citation omitted).

The facts the plaintiff asserts show that once they were

aware of the 2018 assault, DOC officers took immediate steps to

transfer him out of the unit where he had been assaulted and

into a secure unit for his safety.  Plaintiff has failed to

demonstrate that moving him to SHU was an unreasonable or

inadequate response to the alleged threats, or that any officer

was aware that, under the circumstances then present, the

threats amounted to an actual risk of harm, yet failed to take

reasonable steps to protect him.  Absent facts demonstrating a

known significant risk of serious harm, which the plaintiff has

not demonstrated in relation to any verbal threat made after the

assault, the plaintiff has failed to allege that any defendant

violated his Eighth Amendment right to be protected from harm

based on verbal threats by prisoners, and the District Judge

should dismiss that claim.


VIII. Failure to Answer Grievances

The plaintiff alleges that his Fourteenth Amendment due

process rights were violated when DOC officers and officials

failed to respond to his administrative requests and/or

grievances.  "A failure to process an inmate's grievances,

without more, is not a violation of due process."  Gibbs v. N.H.

Dep't of Corr. Comm'r Hanks, 561 F. Supp. 3d 139, 147 (D.N.H.

2021) (citing Freeman v. Dep't of Corr., 447 F. App'x 385, 387

(3d Cir. 2011) (as inmates "do not have a constitutional right

to prison grievance procedures," prison officials' "alleged

obstruction or misapplication of these procedures is not

independently actionable")).  Accordingly, the District Judge

should dismiss the plaintiff's due process claims based on any

DOC officer's or official's failure to respond to the

plaintiff's requests or grievances.


## Conclusion

     For the foregoing reasons, the district judge should

dismiss plaintiff's claims alleging that the defendants or any

other DOC officer or official: failed to investigate or further

the criminal prosecution of the plaintiff's assailants, violated

RICO, conspired to violate the plaintiff's civil rights,

subjected the plaintiff to unconstitutional conditions of

confinement in the SHU, violated the plaintiff's due process

rights by removing his "SPMI" classification, or failed to

answer the plaintiff's request slips or grievances.  Any

objections to this Report and Recommendation must be filed

within fourteen days of receipt of this notice.  <u>See</u> Fed. R.

Civ. P. 72(b)(2).  The fourteen day period may be extended upon

motion.  Failure to file objections within the specified time

waives the right to appeal the district court's order.  <u>See</u>

<u>Santos-Santos v. Torres-Centeno</u>, 842 F.3d 163, 168 (1st Cir.

2016).


                                    Andrea K. Johnstone
                                    United States Magistrate Judge

November 22, 2022

cc:  John Doe, pro se